# NORTHWESTERN ELEVATOR COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 9, 1913.

No. 17,908—(67).

**Use of unsealed weights — evidence.**

1. The plaintiff shipped grain from its country elevators to Minneapolis over the defendant's railroad. The grain was weighed on the plaintiff's hopper scales as it was loaded from the elevators into the cars, and the weights recorded were inserted in the bills of lading issued by the defendant. It is *held* that the fact that the scales were not tested or sealed, in the manner provided by R. L. 1905, § 2729, did not prevent the use of the weights in evidence upon an issue between the plaintiff and the defendant as to the quantity shipped.

**Competent evidence — impeachment of witness.**

2. The defendant, to disprove a leakage or shortage, there being a discrepancy between the elevator weights and the terminal weights, produced certain train books, and the conductors who kept them qualified them as memoranda. The books were not offered in evidence. The conductors, referring to the books produced, and without objection by the plaintiff, testified that they contained no markings opposite the cars shipped by the plain-

[1] Reported in 141 N. W. 298.

121 M.—21.

tiff indicating defects or leakages or broken seals, as they should had there been such. On cross-examination they were asked what the train book showed as to other cars in the same train, but not containing the plaintiff's grain, and stated that there were no marks indicating defects or leakages. On rebuttal the plaintiff offered proof, which was received over the defendant's objection, that the particular cars about which they had testified on cross-examination, and not containing the plaintiff's grain, were leaky or defective or in bad order. It is *held* that such evidence was competent, that it went to the accuracy and trustworthiness of the train books, and that it did not offend the rule as to the impeachment of a witness upon collateral matters.

**Verdict — evidence.**

3. The evidence sustains the verdict.

Action in the district court for Hennepin county to recover $1,071.88, the value of grain alleged to have been lost in certain enumerated shipments over defendant's road. The amended answer admitted the various shipments and alleged that defendant duly transported the grain and promptly delivered the same to the consignees at destination. It further averred that the weights of the grain shipped under the bills of lading, when inserted therein, were inserted "weight subject to correction" and were inserted by the plaintiff, or at its dictation, and without any actual knowledge by defendant of the actual weight delivered. The reply denied the new matter in the answer. The case was tried before Booth, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of defendant upon one cause of action and in favor of plaintiff upon 23. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*Cobb, Wheelwright & Dille,* for appellant.
*Wilson, Mercer, Swan & Stinchfield,* for respondent.

DIBELL, C.

This action was brought in the district court of Hennepin county by the plaintiff shipper against the defendant carrier to recover the value of grain claimed to have been lost in various shipments from points in the western part of the state to Minneapolis. Sixty causes of action were stated, each relating to a single car load shipment.

Thirty-six of these causes of action were dismissed. The jury found for the plaintiff on 23 and for the defendant on one. The defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

1. The plaintiff owned a number of line elevators. The custom was to weigh the grain on the hopper scales of the plaintiff at the elevator, as it was loaded; the plaintiff inserting the weight in the bill of lading, which was marked "Weight subject to correction." The railroad did no weighing.

Section 2729, R. L. 1905, is as follows: "Every person engaged in any business requiring the use of weights or measures shall cause those used by him to be tested and sealed by the county sealer. Every person who shall buy, sell, or dispose of any goods or commodities by an unsealed weight, measure, or scale kept by him, or shall knowingly use any such weight, measure, or scale which has been sealed, but is incorrect, shall be guilty of a misdemeanor; but no contract of sale shall thereby be rendered void."

The defendant sought and offered to prove that the hopper scales were not tested or sealed. An objection to this proof was sustained. It appears from the statements of the trial court, made repeatedly when different offers and objections were made, that the evidence was refused because it was sought to exclude the weights as evidence, and that it might be received for the purpose of affecting the accuracy of the scales, if so desired. The question, then, is whether the fact that the plaintiff's hopper scales were not tested or sealed prevented the use in evidence of the weights which they recorded, for otherwise the offered evidence was immaterial. We hold that it did not.

The plaintiff was shipping its own grain to itself. That one may use his own unsealed scales, for purposes of his own, without offending the statute, is not to be questioned. A farmer, selling grain or produce, may clearly enough weigh what he sells, on unsealed scales, and make use of the weights as evidence. There is no evidence that the plaintiff used its hopper scales in making sales. All the evidence is to the contrary; but, on cross-examination of one of the plaintiff's witnesses, an objection was sustained to a question in-

tended to elicit proof that the scales were used in making sales, and an offer to prove such fact was made and rejected. In deciding the case, we must assume that the offered proof would have established the fact to which it was directed.

We have reached the conclusion that the statute did not intend to outlaw unsealed scales, used as these were, so that the weights which they recorded could not be used as evidence in a contest with the carrier as to shortages in shipments. The decision is confined to the precise question presented.

2. The defendant sought to negative the claim that grain was lost in transit, by showing the condition of the cars at different points of inspection in the course of shipment. The conductors kept "train books" in which they recorded the condition of the cars at inspection points. They had no present recollection of the condition of the cars, and the books did not refresh their memories. The method of getting in evidence books such as these is to show, in substance, that they were made by the person testifying; that they were made in the usual course of employment and at the time of the transactions recorded; that he knew them to be correct when made, and that he has no present recollection of the facts stated in them, even after examining them. The books are then receivable in evidence as memoranda, and their accuracy is subject to attack. The parties adopted the practice, which is not unusual, and which is convenient, of letting the witnesses who accredited the books testify from them as to what they showed, without formally putting them in evidence. A particular conductor would testify from his train book that a car involved in the action was shown on his train book and that there was no marking opposite its number, as there should have been, had there been defects in it, or leakages, or broken or defective seals.

On cross-examination counsel for the plaintiff, having access to the train book, asked the conductor as to the showing of the train book of the condition of other cars, in the same train, but not consigned to the plaintiff, and found the record to show them without notation of defects. The plaintiff, in rebuttal, offered testimony of inspectors, examining the cars at inspection points, to show that such cars, they not being cars containing the plaintiff's shipment, and not shown

by the train books to be in defective condition, were in fact leaky, or otherwise defective or in bad order. This was done for the purpose of affecting the accuracy and trustworthiness of the train books.

The defendant's contention, as it finally resolves itself, is that this was allowing an impeachment of its witnesses in a collateral matter, contrary to the well-known rule. We are unable to adopt this view. The defendant qualified its train books by its conductors; but the train books furnished the evidence, and not the conductors who read from them, except as they accredited them. The situation is, in substance, not different than it would have been had the train books been in evidence, instead of the conductor having them in his hand, telling what they contained. If they had been in evidence, there would be no doubt of the right to impeach them by showing specific errors. "The untrustworthiness of the book may be evidenced by demonstrating specific errors in the entries." 2 Wigmore, Evidence, § 1557.

We have been cited no case, and have found none, nor have we searched far for one, holding the exact point now presented. The question is a novel one; but we apprehend that the rule of evidence applied by the trial court is so logical that its correctness is hardly subject to questioning.

3. The defendant claims that the evidence does not justify the verdict.

The record is a long one. The evidence is not the same as to each shipment. The fact that the bills of lading were delivered to the shipper, showing certain weights, is some evidence of the correctness of such weights. There was some evidence as to the accuracy of the hopper scales. The correctness of the weights at the terminal points is admitted. Much evidence was received tending to show that there was or was not a shortage. The evidence of the defendant did not necessarily negative a shortage. We have examined the record with care, and we think the evidence, which was carefully submitted to the jury, and which has satisfied the scrutiny of the trial court, sustains the verdict.

Order affirmed.